### *Joseph C. Thompson v. Charles L. Ackerman.

1. Justices of the Peace—New Trials—Sec. 6560, Rev. Stat.

    The power of adjudication of a justice of the peace is derived from the statute, and if not exercised within the time allowed by law, his jurisdiction ceases.

*Dismissed by Supreme Court for failure to file papers in time, October 1, 1901. For decision of the court of common pleas, see 10 Dec., 361.

Hence by adjourning the hearing of a motion for a new trial beyond the time limited by Sec. 6560, Rev. Stat., by which his authority to grant new trials is conferred, his jurisdiction on the motion is lost unless it appears of record that the parties consented to such adjournment.

**2. MERE APPEARANCE IS NOT CONSENT.**

Justice courts are of inferior jurisdiction, and consent of parties conferring jurisdiction must appear of record. An appearance at time of hearing a motion or trial of a case beyond the statutory time for the same, is not sufficient to establish consent thereto or confer jurisdiction upon the justice.

**3. ORDER BEYOND STATUTORY TIME—A NULLITY.**

Section 6560, Rev. Stat., 93 O. L. 51, authorizing justices of the peace to grant new trials in certain cases upon motion at any time within four days after entering judgment, does not authorize the hearing of a motion for a new trial March 21, where the judgment was entered March 16, and motion filed March 17, consent of parties to such continuance of five days after entering judgment not appearing on the record, and an order made upon the date of hearing the motion fixing a time to prepare a bill of exceptions is a nullity.

**4. BILL OF EXCEPTIONS—FILED TOO LATE.**

Under Sec. 6565, Rev. Stat., 93 O. L., 104, providing that a justice of the peace shall fix a time to prepare a bill of exceptions not less than five nor more than ten days from date of judgment or overruling of action for new trial, a bill of exceptions prepared and filed thirteen days after judgment, as where judgment was entered March 16, and the bill of exceptions not filed until March 29, is not part of the record and will not be considered by a reviewing court.

**5. CASE CONSIDERED NOTWITHSTANDING IRREGULARITY IN BILL, ETC.**

Notwithstanding a justice was without jurisdiction to hear a motion for new trial, grant an order fixing a time to prepare and file a bill of exceptions, and the bill of exceptions was not legally filed, if these errors are not assigned for review, the court may consider the case upon its merits, such being the only errors assigned.

**6. LANDLORD KNOWINGLY PERMITTING USE OF PREMISES FOR GAMBLING.**

An owner of premises having knowledge that the lessee is using the same for gambling purposes and who does nothing whatever to hinder or prevent the lessee from so keeping and using the same, "knowingly permits" such use within the meaning of Sec. 4275, Rev. Stat.

**7. LIABILITY UNDER SECS. 4275 AND 4276, REV. STAT.**

Under Sec. 4275, Rev. Stat., the owner of premises "knowingly permitting" them to be used for gaming purposes is liable to the extent of the particular property, and under Sec. 4276, Rev. Stat., the lessor shall be liable civilly and criminally as a principal and to the extent of all his property unless he declare a forfeiture.

**8. FORCE OF INCOMPETENT EVIDENCE ADMITTED WITHOUT OBJECTION.**

Evidence not competent, if objected to when admitted without objection, has its natural probative effect. Hence evidence of the plaintiff in an action for forcible entry and detention of premises that he, "understood or had heard" that the occupant "was the owner of the lease," is hearsay evidence, but having been submitted to the jury without objection, upon review will be considered as some evidence of the ownership of the lease thereof.

**9. PRESUMPTION AS TO OWNERSHIP.**

In an action for forcible entry and detainer by the owner of the fee against one in possession of leased premises, the latter will be presumed to be the assignee of the lessee unless the contrary is shown. So where it is shown that gambling was permitted or carried on upon the premises occupied by the defendant, with his knowledge, that he paid the rent, taking receipts therefor in the name of a prior lessee, that he bought the fixtures from his predecessor and gave a chattel mortgage upon them and that he owned the lease, the question of ownership of the lease is properly submitted to the jury to determine.

**10. Repetition of Questions and Answers not Prejudicial.**

The mere repetition of questions and answers asked and answered in the cross-examination of the plaintiff, in his re-examination, can not be held prejudicial.

**11. Conditions in Deed—Conditions in Law.**

A condition subsequent in a deed is one that defeats or determines a vested interest, for the breach of which only a lessor or his heir can enter, but conditions in law are implied conditions for the breach of which the lessor, his heirs, his assignee, or the reversioner may enter.

**12. Forfeiture for Use of Premises for Gambling.**

A tacit condition is annexed by law to all tenancies, that the lessee will not by his unlawful act cause a forfeiture of the landlord's estate, or by such act create an enforcible lien upon the landlord's interest in the leased premises. Therefore, under Sec. 4276, Rev. Stat., the owner of premises, upon which gambling is conducted by the lessee, may bring an action in forcible entry and detainer, enforce a forfeiture and recover possession for the breach of such condition by the lessee.

**13. Mortgagee of Term not Necessary Party.**

In an action for forcible entry and detainer by the grantee of the lessor of certain premises upon which gambling is conducted by the occupying lessee it is not necessary to join as a party defendant the mortgagee of the term.

Heard on Error.

*Richie, Leland & Roby*, for plaintiff in error :

The rule that a mere possibility of reverter is not a subject of grant or conveyance has no application to this case.

When Satterthwait conveyed to Thompson he did not convey an estate to commence in future, *i. e.*, at the expiration of the ten year term of Ackerman, but he conveyed a present vested estate. By that conveyance the seisin, ownership, vested in Thompson, subject to an estate for years in Ackerman, liable to be determined by unlawful acts of the latter. The seizin being in Thompson, if Ackerman's right of possession lapsed by his act, then Thompson being seized of the fee would have the present right of possession. Tiedeman Real Prop., Sec. 24 ; 1 Washb. Real Prop., 472.

That the interest of an assignee of a reversion is a present vested estate as distinguished from a mere possibility of reverter, see Nicoll v. Railroad Co., 12 N. Y., 121.

Where one having granted an estate for years, subsequently conveys the reversion, the assignee of the reversion without special contract to that effect takes with the reversion the right to collect the rentals under the lease. This is conclusive on the proposition that the assignee takes a present vested estate. 1 Washb. Real Prop., 548 ; Smith v. Harrison, 42 Ohio St., 180 ; Tiedeman on Real Prop., Sec. 389.

If an assignee of a reversion die before the expiration of an estate for years created before the assignment to him, a dower interest accrues to the wife, the husband being seized of a present estate. Andrews American Law, 984.

At common law the assignee of the reversion could not avail himself of a breach of condition upon which an estate for years was held, for the reason that the policy of the law prohibited maintenance which the conveyance of the right to prosecute an action for such breach was considered to be. 1 Taylor Landl. and T., Sec. 295 ; 1 Washb. Real Prop , 506, 507.

The statute 32 Hen. VIII, Chap. 34, is not in force in Ohio, but its . . . taken by the code provision requiring actions to be brought in . name of the real property in interest. Masury v. Southworth, **9** Ohio St., 340.

Thompson v. Ackerman.

The right of re-entry for breach of condition is not a reversion nor the possibility of reversion. It is mere right or chose in action. De Peyster v. Michael, 6 N. Y., 467, 506 [57 Am. Dec., 470]; 2 Washb. Real Prop., 16.

As a case on all fours with the case at bar cited Countee v. Armstrong, 9 Dec. (Re.), 62 (10 B., 339).

But the condition in the case at bar differs from that in the above case in that in the latter the condition is an express one while in the present case the condition is an implied one.

Conditions in law or implied conditions always inured to the benefit of an assignee of the reversion. The rule above stated never applied to them under the early common law rule above stated. 2 Washb. Real Prop., 14 and 15.

Thompson is a " lessor " within the meaning of the statute. Mullen v. Peck, 49 Ohio St., 447, 461, Sec. 3 [31 N. E. Rep., 1077].

The principle that forfeiture should be strictly construed does not apply in this case. This statute is a statute remedial in its nature. It imposes a liability civil and criminal upon the owner of the premises wherein gaming is conducted and gives him the remedy of eviction of the tenant. Sutherland on Stat. Const., Sec. 207.

A law respecting public rights and interests, generally, should be liberally construed, so as to make it effectual against the evil it was intended to abate. Ib. Sec. 443.

*Ridenour & Halfhill,* for defendant in error:

When the court states to the jury, " If you find from the evidence and admissions in this case that gaming was permitted or carried on in said premises, then your verdict shall be ' guilty' as charged in the complaint," that it erred, for it would permit the jury to find a forfeiture of the estate resulting from a single act of gaming; whilst the statute is broader, and states that if the premises are occupied for gambling purposes, that the lease becomes void at the instance of the lessor. This charge permits the jury to find that the estate has been forfeited and the right of possession, from the mere act of gambling, irrespective of the election or action on the part of the lessor. There must be an election of forfeiture. (1.) On the part of the lessor, before the estate is forfeited. (2.) A cause of action does not accrue to Thompson, the present owner of the premises, against Charles L. Ackerman, by reason of a violation of Sec. 4276, Rev. Stat. The only lease that would be void by reason of the violation of said section would be the contract of sub-letting between Michael Ackerman and Charles L. Ackerman, and that only Michael Ackerman, the lessor of Charles L. Ackerman, could take advantage of the violation of said section. There is no privity of contract or by blood between the defendant, Charles L. Ackerman, and Thompson.

In a proper case, a violation of Sec. 4276, Rev. Stat., and an election by the lessor would defeat the estate in the lessee, and it would revert to the lessor; but the right to declare the estate void for the sole violation of the statute is personal to the original lessor.

The presumption of law at the time of the execution of the lease, and at all times, was that said premises would not be used or occupied for gaming or gambling, because that would be a violation of law. It was a mere possibility, so far as the original lessor was concerned, that the estate would ever revert to him or that he would have the right to exercise his option to declare a forfeiture. This possibility of reverter

was not and is not the subject of conveyance, and could not be assigned by the original owner. Satterthwaite, to Thompson; and Thompson never had any right in law or in fact to declare a forfeiture by reason of the violation of said section against gaming.

The possibility of a reverter depending upon the happening of an uncertain event, is not subject to alienation. This principle is not confined to a reversion of the fee, but applies to lesser estates. Walker Branch and M. E. Church v. Cemetery Assn., 5 Circ. Dec., 326 (11 R., 185); Ruch v. Rock Island, 97 U. S. Rep., 693–6; Needles v. Needles, 7 Ohio St., 432–442.

Thompson not being in privity of blood with Satterthwaite, had no right to declare the forfeiture; the forfeiture depending as it did upon a mere remote possibility, was not the subject of alienation and could not be assigned to Thompson. He never had the right to declare a forfeiture as against even Michael Ackerman, the owner of the leasehold estate, much less against Charles L. Ackerman, his sub-lessee.

That whatever may be the nature or kind of forfeiture, it is never carried by construction beyond the clear expression of the statute creating it. Bond v. Swearingen, 1 Ohio, 395, 403; Presbyterian Church's Lessee v. Picket, Wright, 57; Callen v. Ellison, 13 Ohio St., 446, 447; Genin v. Grier, 10 Ohio, 209, 214.

In as much as the expectancy is not the subject of transfer, a reverter depending upon the happening of an uncertain event did not pass under the general terms of a deed to Thompson; the right to declare the forfeiture before the expiration of the ten years never vested in Thompson; he could not elect to terminate the estate.

Thompson cannot maintain this action against Charles L. Ackerman, who had not the legal title to the lease by assignment. Michael Ackerman is the owner of the legal estate in the lease, and as such has the right to his day in court before his lease can be declared forfeited. If Thompson could gain possession of this lease as against Charles L. Ackerman, as sub-lessee, every right of Michael Ackerman, the legal owner of this lease, would be destroyed and his property would be taken from him without due process of law. The right to declare a forfeiture for the violation of Sec. 4276 is not a covenant, but a condition that may arise by law. It is not a covenant that runs with the land, as a covenant to pay rent, keep in repairs, etc.; and hence at the time of the assignment there was no covenant or nothing in being assignable or subject to alienation that could be taken advantage of by Joseph C. Thompson.

The act complained of to void this lease is a crime. There can be no agency between persons to do an unlawful act. and especially to commit a crime, and the principal is not bound for the criminal acts of an agent. Hence, Michael Ackerman, the owner of this leasehold, was not bound for the acts of Charles L. Ackerman, even if the latter had used and occupied the premises for the purpose of gambling. Stranahan Co. v. Coit, 55 Ohio St., 398, 410 [45 N. E. Rep., 634]; Mechem on Agency, Sec. 740; Story on Agency, 452.

Opinion of Armstrong, J.: See Ackerman v. Thompson, 10 Dec., 361 (7 N. P. 598).

1. The provisions of Sec. 4276, Rev. Stat., that "whenever premises are occupied for gaming * * * purposes, the lease or agreement * * * shall be absolutely void at the instance of the lessor", operates as a condition subsequent, annexed by implication of law to the terms of the lease or agreement under which the premises are held.

2. This provision vests in the lessor and his privies in blood an election to continue the estate created by the contract, or declare it forfeited on breach of such condi·ion.

3. This right of election is personal to the lessor. It cannot be exercised by the lessee. It is not the subject of transfer by the lessor, especially in the absence of covenants in the lease or agreement, that conditions therein, or arising at law, shall extend to the assigns of either.

4. The possibility of reverter before the expiration of the terms named in the contract for breach of the condition, is a mere expectancy dependent on the happening of an' uncertain event, and is not the subject of alienation.

5. The grantee of the lessor who had previously granted an estate for ten years, takes the fee limited by the unexpired term of ten years. The right of election to declare the estate for years forfeited before the expiration of the term, if the premises are occupied for gambling purposes, does not pass under the general term of the lessor's deed. Such grantee can not assert the forfeiture, nor maintain an action in forcible detention to recover the premises on breach of such condition.

MOONEY, J.

The original action was in forcible entry and detainer brought in the court of Miner A. Atmur, a justice of the peace of this county. In that action Joseph C. Thompson, as owner of certain premises, sought to recover the possession because, as he alleged, the lease under which Chas. L. Ackerman occupied the same had become forfeited by reason of the use thereof by said Ackerman for gaming purposes. The defendant, Ackerman, in that action filed what is called his answer, and therein denied that the premises were used for gaming purposes, and averred that in 1894 the premises in question were owned in fee by one Satterthwaite, and that said owner, being so seized, executed a lease thereof to one Freel for the term of five years and renewable at the option of said lessee for a further term of five years ; that thereafter Freel assigned the term to one Michael Ackerman, and that Michael Ackerman duly exercised the option and renewed the term; that said Satterthwaite died intestate and the lands deceded to his heirs who, about July, 1897, conveyed the same in fee to Thompson; that Charles L. Ackerman holds as sub-lessee under Michael Ackerman, and has never had any relation, by contract or otherwise, with Satterthwaite or his heirs, with Thompson or Freel; that Michael Ackerman has never used said premises for any unlawful purpose, and has never permitted or had knowledge of any such use. Charles asks that Thompson be required to make Michael a party defendant, and that the action as to him, Charles, may be dismissed.

March 16, 1900, trial was had to a jury resulting in a verdict for Thompson, and judgment for restitution was thereupon rendered. March 17, a motion was filed by the defendant for a new trial, assigning as grounds therefor that the verdict was against the weight of evidence and not supported by sufficient evidence; that the court erred in the admission and rejection of evidence; that the court erred in not sustaining defendant's motion to direct a vedict for defendant at the close of plaintiff's case in chief ; and that the court erred in his charge to the jury and in his refusal to charge as requested. On March 21, this motion was heard and overruled and the court, a second time, entered

judgment of restitution and at the same time fixed eight days from said date as the time within which defendant might prepare and present his bill of exceptions. March 29, defendant filed his bill of exceptions which was then allowed and signed by the justice of peace. This bill of exceptions embodies all the evidence and sets out all rulings and orders made by the court on the trial of the cause.

On leave, the defendant, as plaintiff in error, filed his petition in error in the common pleas and assigned as error the refusal of the court, on defendant's motion, to require plaintiff below to make Michael Ackerman a party defendant, and meanwhile, either to dismiss the complaint as to the defendant or suspend the trial of the cause. The other errors assigned are, that the court erred in overruling the motion for a new trial, and the several matters stated in said motion as grounds for new trial are also assigned as errors.

On trial in the common pleas the court reversed the judgment.

First—For error in overruling motion for new trial because Thompson could not, under Sec. 4276, Rev. Stat., maintain the action during the term, the right of election to declare the forfeiture being reserved to Satterthwaite and his heirs, and not passing by conveyance to Thompson.

Second—Said justice of the peace had no jurisdiction to entertain said action or pronounce said judgment, because Michael Ackerman is a necessary party defendant.

Third—For error in the charge given, in this; that the court charged " if you find from the evidence and admissions in this case that gaming was permitted or carried on in said premises then your verdict shall be guilty as charged in the complaint."

To reverse this judgment of reversal this action is brought in this court.

It will be observed that all errors assigned in the common pleas are predicated upon the bill of exceptions. Section 6565, Rev. Stat., as amended April 12, 1898, 93 O. L., 104, and since in force, provides that the justice of the peace shall fix a time to prepare the bill of exceptions not less than five or more than ten days from date of judgment or overruling motion for new trial. Section 6560, as amended March 17, 1898, 93 O. L., 51, and since in force, provides that : " It shall be lawful for the justice before whom a cause has been tried, on motion, and being satisfied that the verdict was obtained by fraud, partiality or undue means, at any time within four days after the entering of judgment to grant a new trial."

This trial was had and judgment entered March 16; the motion for new trial was heard March 21, five days after, and the bill of exceptions was allowed, signed and filed March 29, thirteen days after judgment.

In Derby, Jr., v. Heath, 59 Ohio St., 54 [51 N. E. Rep., 547], decided under another statute, which fixed the time for granting a new trial at five days, instead of four days as now provided, it was held, "the authority of a justice of the peace to grant a new trial is limited by the terms of Sec. 6560 by which it is conferred, and an order made by him for that purpose after the time therein limited is void."

In Dunlap v Robinson, 12 Ohio St., 530, the court say, p. 534: "A justice of the peace cannot, by neglecting or refusing to enter judgment within the time required by statute, keep an action indefinitely pending before himself. When his power to determine the controversy, by a valid judgment, ceases, his jurisdiction ends. His power of adjudica-

Thompson v. Ackerman.

tion is derived from the statute and if not exercised within the time allowed by law it is clearly lost and the cause is no longer pending before him. The legal effect of such a failure in duty is a discontinuance of the action. So jurisdiction may be lost by an adjournment of the suit, without consent of parties, for a time longer than the statute permits."

It follows that in adjourning the hearing of the motion for new trial to a time when the justice of the peace had no jurisdiction to render a valid judgment on the motion, jurisdiction was lost unless parties consented to such adjournment.

The court being one of inferior jurisdiction, this consent conferring jurisdiction must appear of record, and appearance at the time of hearing so fixed is not such consent. Derby v. Heath, *supra*.

The justice of the peace, therefore, on March 21, was without jurisdiction to hear this motion, the cause was discontinued, and an order then made fixing a time to prepare a bill of exceptions was a nullity, and the bill prepared and filed thirteen days after judgment can not be considered by a reviewing court. No errors being assigned, save those predicated upon the bill of exceptions, this ruling would be conclusive of the matter, but inasmuch as this point was not argued by counsel, and being mindful that the statute forbids courts and judges to practice law, we have considered the cause upon the merits.

It is first objected that there is a defect of parties defendant. Charles A. Ackerman contends that he is not liable; that no cause of action exists or can exist against him, but that the cause of action, if any, is against Michael. The case as claimed by Charles, is the same as if A were sued upon a promissory note and upon which not A, but B was liable. This would not be a case of defect of parties defendant, and plaintiff would fail because he had no cause of action against A. The justice of the peace in ruling that there was no defect of parties defendant was not in error.

It is next objected that the trial court erred in permitting plaintiff on re-examination to answer two questions over defendant's objection. These questions and the answers thereto are mere repetitions of questions and answers put to Thompson by defendant on cross-examination, and for that reason were not prejudicial.

The defendant at the close of plaintiff's case moved the court to direct a verdict for defendant. This motion was overruled and defendant excepted. As the case then stood, it was " conceded that on February 3, 1900, there was gambling conducted on the premises in the complaint described, and that this gambling was with the knowledge and consent of Charles L. Ackerman. The language is, " there was gambling conducted."

" To conduct," according to the Century dictionary, means " to direct the course of, to manage, to carry on," and, by the same authority, " to carry on " means " to manage or be engaged in ; to continue to prosecute ; to keep in progress."

If gambling was then managed and kept in progress, the transaction was more than a single act, and it seems to us the meaning is, or may be that on that day the building was in part occupied for gambling purposes.

It is urged that Charles L. Ackerman was not a tenant to Thompson ; that there was neither privity of estate nor contract between them, and that plaintiff's evidence so shows. The testimony of Thompson is that Charles L. Ackerman was the occupant ; that he paid the rent, tak-

ing receipts in the name of Michael Ackerman; that Michael Ackerman sold the fixtures to Charles, took a chattel mortgage, and that he (Thompson) "understood or had heard that Charles was the owner o the lease."

That this statement of the witness is hearsay is beyond question, but it went to the jury without objection. Can it' be said that, under such circumstances, this hearsay is no evidence?

In Damon v. Carroll, 163 Mass., 404 [40 N. E. Rep., 185], where hearsay evidence was submitted to the jury without objection and no motion to rule out was made, it was said, pp. 187, 408: "It is the ordinary case of something less than the best evidence, but of evidence admitted and to be dealt with by the jury. * * * Papers signed by trustworthy persons, if put in evidence before a jury, although not competent if objected to, naturally tend to induce belief of the matters contained in them. * * * When hearsay evidence is incompetent, the reason for its exclusion is the same in principle as that which formerly excluded testimony from interested witnesses. * * * But it was always held that if testimony, incompetent by the reason of the interest of a witness, was allowed to go before the jury, they might consider it as they would any other testimony. Healy v. Barnes, 4 Denio, 73; Donelson v. Taylor, 8 Pick, 390; 1 Greenl. Ev. (15 ed.), Sec. 421 * * * Ib. 423. * * * Hearsay evidence is treated by Bentham as in the nature of secondary evidence. * * * It is admitted in Scotland. Upon some questions, hearsay is competent evidence everywhere." And as shown by the head note, it was held in that case that evidence not competent if objected to, when admitted without objection, has its natural probative effect.

In this view the hearsay evidence of Thompson was some evidence of the fact that Charles L. Ackerman was the owner of the lease. Aside from this evidence, in an action by the owner of the fee against one in possession of the leased premises, the latter will be presumed to be the assignee of the lessee unless the contrary is shown. Cross v. Upson, 17 Wis., 618; Mariner v. Crocker, 18 'Wis., 251; Bedford v. Terhune, 30 N. Y., 453 [86 Am. Dec., 394].

The stipulation shows that gambling was carried on in said premises on a certain day with the knowledge of Charles L. Ackerman, and under the facts and circumstances disclosed and with the presumption existing it was proper for the jury to say whether Charles L. Ackerman was a sub-lessee or the assignee of the lessee, and there was no error in overruling defendant's motion to direct a verdict, unless plaintiff is in a position in which he can not take advantage of any breach of condition, which question will be disposed of hereafter.

The court charged the jury, among other things, "If you find from the evidence and admissions in this case that gaming was permitted or carried on in said premises, then your verdict shall be guilty as charged."

If Charles L. Ackerman was the assignee of the lessee, we think this instruction was right, provided that Thompson, as Sattesthwaite's grantee, may maintain the suit. "To permit" means either, first, "to suffer or allow to be, come to pass or take place, by tacit consent or by not prohibiting or hindering," or second, "to grant leave or liberty to by express consent; to allow expressly." If being in actual possession he permitted within the one meaning or the other, he would be liable criminally under the gambling statute, Sec. 6933, Rev. Stat. If so, we

Thompson y. Ackerman.

see no reason why the same conclusion would not follow in a civil action. Saving the questions indicated we find no error in the instruction.

It is to be observed that Charles L. Ackerman as a witness in his own behalf admitted that Michael Ackerman held title to the lease to secure to him, Michael, the payment of money by Charles. In this view Charles was owner and Michael mortgagee of the term, and that in view, according to all authorities, Michael was not a necessary party. 13 Am. & Eng. Ency. Law (2 ed.), 766. The defendant's testimony might well justify the jury in finding that gambling was carried on at other times before February 4, 1900.

It is finally contended that the statute, Sec. 4276, Rev. Stat., creates a condition subsequent, and that Stat. 32 Henry VIII, Chap. 34, not being in force in Ohio, only the lessor or his heirs can take advantage of the forfeiture provided; that this is especially the case since, in express terms, the forfeiture is to result at the instance of the lessor, and that Thompson cannot therefor maintain this action.

Section 4275, Rev. Stat., provides that if the owner of the building in which the money was lost, knowingly permits it to be used for gaming purposes, such building and the real estate upon which it stands shall be liable for the fines and costs, and damages and costs recovered under Sec. 4270, Rev. Stat., and following sections.

Section 4276, Rev. Stat., provides if any person *lease* premises for gambling, or knowingly permit them to be so used, he, the lessor, shall be liable civilly and criminally as a principal.

The *owner* therefore "knowingly permitting" is liable to the extent of the particular property, the lessor to the extent of all his property. To "knowingly permit" was first used in the gambling act of January 17, 1846, 44 O. L. 1, Sec. 6932, Rev. Stat. In Sec. 1 of that act it was provided "that if the owner of any building knows that any gaming tables are used therein and shall not forthwith cause complaint to be made against the person so keeping and using the same, he shall be held to have knowingly permitted." The term has been used in the statute from that time to this, and must be held to have the same meaning, to-wit: "having knowledge to fail to hinder or prevent." "To permit" does not here mean to "expressly consent." The owner's knowlege and inaction is enough. The act last passed, 73 O. L. 249, 250, Sec. 6934, Rev. Stat., *et seq.*, as well as all prior acts, was entitled, "An act for the suppression of gambling." That is the end, the purpose of the legislation. Under Section 4276, Rev. Stat., the lessor may and must declare a forfeiture, and failing so to do becomes liable civilly and criminally as a principal. Does the right extend to the lessor's grantee? It is argued that the statute providing for the forfeiture must be strictly construed. As to which forfeiture is the statute to be strictly construed? For there are two forfeitures. The owner who has violated the law by no act of his may forfeit his estate. The tenant by using the premises for gambling purposes may forfeit his term, and the tenant has violated the law by his act. As between the two is not the statute to be construed in favor of the land owner and thus accomplish the purpose of the law, or is it to be construed in favor of the tenant and thus defeat that purpose? But the technical reason is assigned that only a lessor or his heirs can enter for breach of a condition subsequent; that the lessor's grantee cannot. This is not true as to all conditions subsequent. Aside from statute 32, Henry VIII, Chap. 34, only the lessor or his heirs can enter for the breach

Allen Circuit Court.

of a condition subsequent *in deed*. A condition in deed is an express condition. A condition subsequent is one that defeats or determines a vested interest. For breach of a condition subsequent, expressly stated in the instrument creating the term, only the lessor or his heirs can enter.

The condition here is not shown by the record to be such. Conditions in law are implied conditions, and for breach of these the rule is otherwise. "If there be a breach of the conditions in law, the lessor or his heirs, or, if he have aliened his estate, his assignee, may avail himself of the right to enter." Coke on Littleton, 214; Shepard's Touchstone, 441; 2 Crabb Real Property, 835; 2 Washb. Real Property, Sec. 14; Tiedeman Real Property, Sec. 277. And 4 Kent, page 121, states: "If the tenant for life or years aliened his land by feoffment this act was, at common law, an implied forfeiture of the estate, and the reversioner might enter as for a breach of a condition in law. These estates were likewise subject to forfeiture, not only for waste, but for any other act which in the eye of the law tended to defeat or divest the estate in reversion or pluck the seigniory out of the hands of the lord. It was a tacit condition annexed to every tenancy, that the tenant should not do any act to the prejudice of the reversion." Wright on Tenures, page 203; Taylor on Landl. and T., Secs. 271, 272 and 488.

It cannot be believed that that law which decrees a forfeiture for attorning to a stranger—a void thing and creating no rights as against the landlord—will not so decree when by the tenant an act is done which puts a valid lien upon the landlord's estate, perhaps for an amount which will consume the entire reversion. The liability to loss of his property placed upon the landlord, whether he be the lessor or the grantee of the lessor; the violation of his common law duty by the tenant who conducts gambling upon the leased premises; the purpose of our legislation which is to effectually suppress gambling, the duty of the landlord which is to hinder or prevent the unlawful acts upon his premises, all permit, if indeed they do not require the lessor's grantee to hinder gambling upon his premises by expelling therefrom a tenant whose criminal act may deprive the landlord of his entire estate in reversion.

Having imposed this liability upon the landowner, it would seem a hardship if a way in harmony with the spirit of the legislations were not provided by which the liability could be avoided. We believe that that way has been provided by the common law and that it must be held that it is a tacit condition annexed by law to all tenancies that the lessee or his assignee will not by his unlawful act cause a forfeiture of the landlord's estate, or by such act create an enforcible lien upon the landlord's interest in the leased premises, and for breach of such condition the lessor or his grantee may, by an action in forcible entry and detainer, enforce a forfeiture and recover possession.

We do not pass upon the weight of the evidence because on error in actions for forcible entry and detainer this question cannot be considered. State v. Wood, 22 Ohio St., 537.

Upon the whole case we find no error in the record of the justice of the peace. The judgment of the common pleas is reversed and that of the justice of the peace affirmed.